**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**Case No.** ___6:22-cv-56_____

NANCY MARTINEZ, on behalf
of herself and all others similarly
situated,

           Plaintiff,

vs.

THE PROCTOR & GAMBLE
COMPANY;

           Defendant.

**CLASS ACTION COMPLAINT**

Plaintiff Nancy Martinez ("Plaintiff"), on behalf of herself and all others similarly situated,

file this Class Action Complaint ("CAC") against Defendant, The Proctor & Gamble Company

("Defendant"), and in support states the following:

**NATIURE OF THE ACTION**

1.     This is a class action lawsuit by Plaintiff, and others similarly situated, who

purchased certain aerosol antiperspirant sprays manufactured, sold and distributed by Defendant.

Defendant distributes, markets and sells several over-the-counter aerosol dry shampoo and dry

conditioner spray products under the brand names "Waterless," "Pantene," "Herbal Essences,"

"Aussie," "Hair Food" and "Old Spice" (collectively hereafter the "Aerosol Spray Products"). The

Defendant's Aerosol Spray Products (identified below) are adulterated and/or contaminated with

benzene, a known human carcinogen. The presence of benzene in Defendant's Aerosol Spray

1

Products was not disclosed to consumers in the products' labelling, advertising or otherwise, in violation of state and federal law. Plaintiff and the putative class suffered economic damages due to Defendant's misconduct (as set forth below) and seek injunctive relief and restitution for the full purchase price of the Aerosol Spray Products. Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and Plaintiff is a citizen of a state different from Defendant.

3.      This Court has jurisdiction over Defendant because it is authorized to conduct and do business in Florida. Defendant has marketed, promoted, distributed, and sold Aerosol Spray Products, including the Aerosol Spray Products identified below, in Florida and Defendant has sufficient minimum contacts with this state and/or sufficiently availed itself of the markets in this state through promotion, sales, distribution and marketing to render the exercise of jurisdiction by this Court permissible.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff Nancy Martinez' claims occurred in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendant transacts substantial business in this district.

## THE PARTIES

5.     At all relevant times, Plaintiff Nancy Martinez "(Martinez") was a citizen and resident of Altamonte Springs, Florida. Martinez has purchased and used numerous Proctor & Gamble aerosol spray products over the years. Most recently, in or around 2021, Martinez purchased Defendant's Pantene, Herbal Essences and Aussie dry shampoo and/or dry conditioner Aerosol Spray Products from Publix Supermarket, Walgreens, and Ross Department Stores in Altamonte Springs, Florida, spending an estimated $90.00 collectively. The Aerosol Spray Products purchased by Martinez have since been recalled by Defendant due to the presence of benzene, as detailed below. Based on the false and misleading claims by Defendant, at the time of purchase Martinez was unaware that Defendant's Aerosol Spray Products were adulterated with benzene. Martinez purchased the Defendant's Aerosol Spray Products on the assumption that the labeling of Defendant's Aerosol Spray Products was accurate and that the products were unadulterated, safe and effective. Martinez would not have purchased Defendant's Aerosol Spray Products had she known the Aerosol Spray Products contain benzene, a known human carcinogen. As a result, Martinez suffered injury in fact when she spent money to purchase products she would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

6.     Defendant, The Proctor & Gamble Company, is an Ohio corporation with principal place of business at 1 P&G Plaza, Cincinnati, OH 45202. As one of the world's leading brands of skin care, hair care and cosmetics, Defendant distributes its products, including the Aerosol Spray Products identified below, throughout the United States. Defendant's line of antiperspirant products, including the adulterated antiperspirant purchased by Plaintiff and members of the putative class, are available at retail stores throughout Florida and the United States.

**INTRODUCTION**

7.      Defendant manufactures, markets, advertises, labels, distributes, and sells a variety

of dry shampoo and dry conditioner aerosol spray products, including:

| 1 | Waterless | Dry Conditioner | Weightless Smooth |
|---|---|---|---|
| 2 | Waterless | Dry Conditioner | Instant Moisture |
| 3 | Pantene | Dry Conditioner | Sultry Bronde All in One Luxury Mist |
| 4 | Pantene | Dry Conditioner | Smooth Talker Dry Conditioning Oil |
| 5 | Pantene | Dry Conditioner | Mist Behaving Dry Conditioning Mist |
| 6 | Pantene | Dry Conditioner | Gold Series Instant Nourishing Spray |
| 7 | Aussie | Dry Conditioner | Smooth Vibes Dry Conditioner |
| 8 | Aussie | Dry Conditioner | Petal Soft Dry Conditioner |
| 9 | Aussie | Dry Conditioner | Sleekend Warrior Dry Conditioner |
| 10 | Herbal Essences | Dry Shampoo | Essences Blue Ginger Refresh Dry Shampoo |
| 11 | Herbal Essences | Dry Shampoo | White Grapefruit & Mint Dry Shampoo |
| 12 | Herbal Essences | Dry Shampoo | White Strawberry & Sweet Mint Dry Shampoo |
| 13 | Herbal Essences | Dry Shampoo | Cucumber & Green Tea Dry Shampoo |
| 14 | Pantene | Dry Shampoo | Dry Shampoo No Water Refresh |
| 15 | Pantene | Dry Shampoo | Dry Shampoo Sheer Volume |
| 16 | Pantene | Dry Shampoo | Never Tell Dry Shampoo |
| 17 | Aussie | Dry Shampoo | After Hours Dry Shampoo Texture Spray |
| 18 | Aussie | Dry Shampoo | Tousle Hustle Dry Shampoo |
| 19 | Aussie | Dry Shampoo | Bounce Back Dry Shampoo |
| 20 | Aussie | Dry Shampoo | Clean Color Protect Shampoo |

| 21 | Aussie | Dry Shampoo | Clean Texture Dry Shampoo |
| 22 | Aussie | Dry Shampoo | Clean Volume Dry Shampoo |
| 23 | Waterless | Dry Shampoo | Dry Shampoo No Residue |
| 24 | Hair Food | Dry Shampoo | Coconut Dry Shampoo |
| 25 | Old Spice | Dry Shampoo | Fiji Dry Shampoo |
| 26 | Old Spice | Dry Shampoo | Pure Sport Dry Shampoo[1] (hereafter collectively referred to as "Aerosol Spray Products") |

8.      In 2021, Valisure LLC and ValisureRX LLC ("Valisure"), an analytical pharmacy, ran tests on a variety of aerosol sunscreen spray products on the market. In some cases, Valisure, engaged the Chemical and Biophysical Instrumentation Center at Yale University ("Yale") to conduct simultaneous testing to help ensure validity of results. Through its testing, Valisure (and Yale) discovered that certain aerosol spray sunscreen products from various manufacturers contained benzene, with values ranging from <0.1 parts per million ("ppm") to >0.1 ppm to more than 2 ppm.

9.      Benzene is used primarily in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum. The health hazards of benzene have been recognized for over one hundred years. Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[2] As noted by the IARC:

---

[1] Discovery may reveal additional Aerosol Spray Products manufactured, sold, and distributed by Defendant that are affected by this action and Plaintiffs reserve their right to include any such products in this action.
[2] Benzene / IARC Working Group on the Evaluation of Carcinogenic Risks to Humans (2017: Lyon, France), at p. 33.

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on *sufficient evidence* of carcinogenicity in humans, *sufficient evidence* of carcinogenicity in experimental animals, and *strong* mechanistic evidence. … The Working Group affirmed the strong evidence that benzene is genotoxic, and found that it also exhibits many other key characteristics of carcinogens, including in exposed humans. In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[3]

10.    The Food and Drug Administration ("FDA") similarly recognizes that "[b]enzene is a carcinogen that can cause cancer in humans"[4] and classifies benzene as a "Class 1" solvent that should be "avoided."[5] And the National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "skin absorption" as an exposure route.[6] According to the National Toxicology Program ("NTP"), benzene is "*known to be a human carcinogen* based on sufficient evidence of carcinogenicity from studies in humans."[7]

11.    The FDCA defines "cosmetics" by their intended use, as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body...for cleansing, beautifying, promoting attractiveness, or altering the appearance[.]" Federal Food, Drug, and Cosmetic Act § 201(i). "Cosmetic companies have a legal responsibility for the safety of their products and ingredients."[8]

---

[3] *Id*. at 34.

[4] https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinksand-other-beverages#q1.

[5] https://www.fda.gov/media/71737/download.

[6] Centers for Disease Control and Prevention. *The National Institute for Occupational Safety and Health (NIOSH), Benzene* (https://www.cdc.gov/niosh/npg/npgd0049.html).

[7] http://ntp.niehs.nih.gov/go/roc/content/profiles/benzene.pdf (emphasis added).

[8] https://www.fda.gov/cosmetics/resources-consumers-cosmetics/cosmetics-safety-qa-personal-

12.     Following Valisure's reporting indicating that benzene was present in some aerosol sunscreen spray products, Defendant initiated a review of its portfolio of aerosol products. Based on that review, on December 17, 2022, Defendant announced it was voluntarily recalling numerous lots of "aerosol dry conditioner spray products and aerosol dry shampoo spray products from Pantene, Aussie, Herbal Essences, and Waterless produced in the United States, in addition to previously discontinued aerosol dry shampoo products from Old Spice and Hair Food, due to the presence of benzene detected in some products."[9] In its recall announcement, however, Defendant does not disclose how many dry shampoo and dry conditioner aerosol spray products it tested or what levels of benzene were detected in those products. For instance, did Defendant only recall those dry shampoo and dry conditioner aerosol spray products that tested above 1 ppm? 2 ppm? 3 ppm? 4 ppm? That information has not been disclosed by Defendant, which is concerning since there is no "no safe level of benzene" exposure.[10] Thus, if Defendant is still using benzene in the manufacture of its aerosol spray products at levels that are dangerous to health and/or in violation of state and/or federal law, without disclosing that information to consumers, consumers remain vulnerable to continued economic damages and harm unless the injunctive relief requested herein is granted.

13.     The manufacture of any misbranded or adulterated cosmetic is prohibited under federal law[11] and Florida state law.[12]

---

care-products.

[9]  *See*  https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/pg-issues-voluntary-recall-aerosol-dry-conditioner-spray-products-and-aerosol-dry-shampoo-spray.

[10] https://www.who.int/ipcs/features/benzene.pdf.

[11] 21 U.S.C. §331(g).

[12] *See* Fla. Stat. § 499.005(1) ("It is unlawful for a person to perform or cause the performance of any of the following acts in this state: (1) The manufacture, repackaging, sale, delivery, or holding or offering for sale of any drug, device, or cosmetic that is adulterated or misbranded or has otherwise been rendered unfit for human or animal use.").

14.     The manufacture within any Territory of any cosmetic that is adulterated or misbranded is prohibited.[13]

15.     The adulteration or misbranding of any cosmetic in interstate commerce is prohibited.[14]

16.     The introduction into commerce of any misbranded or adulterated cosmetic is similarly prohibited.[15]

17.     The receipt in interstate commerce of any adulterated or misbranded cosmetic is also unlawful.[16]

18.     Among the ways a cosmetic may be adulterated are:

> (1) If it bears or contains any poisonous or deleterious substance that is injurious to users under the conditions of use prescribed in the labeling or advertisement thereof or under such conditions of use as are customary or usual[;]
> (2) If it consists in whole or in part of any filthy, putrid, or decomposed substance[;]
> (3) If it has been produced, prepared, packed, or held under conditions whereby it could have become contaminated with filth or whereby it could have been rendered injurious to health.[17]

19.     A cosmetic is misbranded "[i]f its labeling is false or misleading in any particular.[18]

20.     Defendant did not disclose benzene, a known human carcinogen, is present in the Aerosol Spray Products purchased by Plaintiff and the putative class members. As a result of benzene contamination in the Aerosol Spray Products, they are considered adulterated and

---

[13] 21 U.S.C. §331(a); Fla. Stat. § 499.005(1).
[14] 21 U.S.C. §331(b); Fla. Stat. § 499.005(2).
[15] 21 U.S.C. §331(a); Fla. Stat. § 499.005(1).
[16] 21 U.S.C. §331(c); *see also* Fla. Stat. § 499.005(3)("It is unlawful for a person to perform or cause the performance of any of the following acts in this state: … (3) The receipt of any drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery of such drug, device, or cosmetic, for pay or otherwise.").
[17] Fla. Stat. § 499.008(1)-(3); 21 U.S.C. §362(a) (cosmetic).
[18] Fla. Stat. § 499.007(1); 21 U.S.C. §362(a) (cosmetic).

misbranded. There is no "no safe level of benzene" exposure in cosmetics, so it is unsuitable for human application as a dry shampoo or dry conditioner.[19]

21.      Defendant wrongfully advertised and sold the Aerosol Spray Products without any labeling to indicate to consumers that these products contain benzene. The following image is illustrative of the labels contained on the Aerosol Spray Products purchased by Plaintiff and the class members:



---

[19] https://www.who.int/ipcs/features/benzene.pdf.



22.     Florida law specifically provides that a cosmetic is adulterated "[i]f it consists in whole or in part of any filthy, putrid or decomposed substance" (Fla. Stat. § 499.008(2) or "contains any poisonous or deleterious substance that is injurious to users under the conditions of use prescribed in the labeling or advertisement thereof, or under such conditions of use as are customary or usual . . . . Fla. Stat. § 499.008(1) (emphasis added). Here, the Aerosol Spray

10

Products violate both provisions: they (1) consist of a filthy or putrid substance (i.e. benzene) and (2) contain a poisonous or deleterious substance (i.e. benzene) that is injurious to users under the conditions of use prescribed.[20]

23.     Plaintiff has standing to represent members of the putative class because there is sufficient similarity between the specific Aerosol Spray Products purchased by the Plaintiff and the other Aerosol Spray Products not purchased by Plaintiff. Specifically, each and every one of Defendant's Aerosol Spray Products (i) are marketed in substantially the same way – as dry shampoo or dry conditioner — and (ii) fail to include labeling indicating to consumers that the Aerosol Spray Products contain benzene at levels that are potentially dangerous to human health when used as directed. Accordingly, the misleading effect of all of the Aerosol Spray Products are substantially the same.

24.     Had Plaintiff and members of the putative class known that *any* of the Aerosol Spray Products were contaminated with benzene at levels that are potentially harmful, they would not have purchased *any* of Defendant's Aerosol Spray Products. Thus, Plaintiff and members of the putative class have "lost money" by purchasing products they would not have otherwise purchased but for Defendant's misrepresentations. The decision to purchase or not purchase Aerosol Spray Products that contain benzene at any level is a financial and healthcare decision that affects the Plaintiff and members of the putative class in a personal and individual way, thus conferring a particularized injury. By failing to disclose the presence of benzene in its Aerosol Spray Products, Plaintiff and members of the putative class have been denied the opportunity to make those informed decisions. As a result, Plaintiff and members of the putative

---

[20]   https://www.who.int/ipcs/features/benzene.pdf.  (World Health Organization noting that "[b]enzene is carcinogenic to humans, and no safe level of benzene can be recommended.")

class have Article III standing.

## CLASS ALLEGATIONS

25.     Plaintiff brings this action on behalf of herself and all other similarly situated

class members (hereafter the "Class") pursuant to Rule 23(a), (b)(2) and (b)(3) of the

Federal Rules of Civil Procedure and seeks certification of the following class against

Defendant for violations of Florida state laws and/or similar laws in other states:

### Nationwide Class Action

All consumers who purchased any Herbal Essences, Aussie, Pantene
Waterless, Hair Food or Old Spice dry shampoo or dry conditioner
aerosol spray products in the United States of America and its
territories from January 10, 2018 to the present for personal use or
consumption.

Excluded from the Class are individuals who allege personal bodily
injury resulting from the use of Herbal Essences, Aussie, Pantene
Waterless, Hair Food or Old Spice dry shampoo or dry conditioner
aerosol spray products. Also excluded from this Class are
Defendant, any parent companies, subsidiaries, and/or affiliates,
officers, directors, legal representatives, employees, co-
conspirators, all governmental entities, and any judge, justice or
judicial officer presiding over this matter.

26.     In the alternative, Plaintiff brings this action on behalf of herself and all other

similarly situated Florida consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal

Rules of Civil Procedure and seeks certification of the following Sub-Classes:

### Florida Sub-Class

All consumers who purchased any Herbal Essences, Aussie, Pantene
Waterless, Hair Food or Old Spice dry shampoo or dry conditioner
aerosol spray products in the State of Florida from January 10, 2018
to the present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily
injury resulting from the use of Herbal Essences, Aussie, Pantene
Waterless, Hair Food or Old Spice dry shampoo or dry conditioner
aerosol spray products. Also excluded from this Class are

> Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

27. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff are informed and believe that the proposed Class contains thousands of purchasers of Defendant's Aerosol Spray Products who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff at this time.

28. Plaintiff's claims are typical to those of all class members because members of the class are similarly injured through Defendant's uniform misconduct described above and were subject to Defendant's deceptive claims that accompanied each and every Aerosol Antiperspirant Product in Defendant's collection. Plaintiff are advancing the same claims and legal theories on behalf of herself and all members of the Class.

29. Plaintiff's claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The claims of Plaintiff and all prospective Class members involve the same alleged defect. These common legal and factual questions include the following:

    (a)  whether Defendant's Aerosol Spray Products contain benzene;

    (b)  whether Defendant's omissions are true, or are misleading, or objectively reasonably likely to deceive;

    (c)  whether the alleged conduct constitutes violations of the laws asserted;

    (d)  whether Defendant's alleged conduct violates public policy;

    (e)  whether Defendant engaged in false or misleading advertising;

    (f)  whether Defendant was unjustly enriched as a result of its labeling,

marketing, advertising and/or selling of the Aerosol Spray Products;

(g)   whether Plaintiff and the Class members are entitled to damages and/or restitution and the proper measure of that loss; and

(h)   whether an injunction is necessary to prevent Defendant from continuing to market and sell defective and adulterated Aerosol Spray Products that contain benzene, a known human carcinogen.

30.    Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the Class. Plaintiff has retained counsel experienced in complex litigation and class actions. Plaintiff's counsel has successfully litigated other class action cases similar to those here and have the resources and abilities to fully litigate and protect the interests of the Class. Plaintiff intend to prosecute this claim vigorously. Plaintiff have no adverse or antagonistic interests to those of the Class, nor are Plaintiff subject to any unique defenses.

31.    A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by the Plaintiff and individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

32.    The Class also may be certified because Defendant has acted or refused to act on

14

grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

33. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described above, such as continuing to market and sell Aerosol Spray Products that are adulterated with benzene, and requiring Defendant to provide a full refund of the purchase price of the Aerosol Spray Products to Plaintiff and Class members.

34. Unless a class is certified, Defendant will retain monies received as a result of their conduct that were taken from Plaintiff and the Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

<u>**COUNT I**</u>

<u>**Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-213**</u>

**(On Behalf of Plaintiff Martinez and the Florida Sub-Class)**

35. Plaintiff Nancy Martinez incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

36. Plaintiff Martinez brings this Count individually and on behalf of the Florida Sub-Class.

37. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") renders unlawful unfair methods of competition, unconscionable acts or practice, and unfair or deceptive acts or practices in the conduct of any trade or commerce. § 501.204, Fla. Stat.

38. Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or

15

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202, Fla. Stat.

39.     As alleged herein, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendant's conduct because they purchased Aerosol Spray Products from Defendant in reliance on Defendant's representation that the contents of its Aerosol Spray Products were safe and effective and were not adulterated with benzene, a known human carcinogen.

40.     As alleged herein, Defendant's actions are deceptive and in clear violation of FDUTPA, entitling Plaintiff and the Class to damages and relief under Fla. Stat. §§ 501.201-213.

41.     Defendant has engaged, and continues to engage, in conduct that is likely to deceive members of the public. This conduct includes failing to make any mention that its Aerosol Spray Products are adulterated with benzene, a known human carcinogen.

42.     Similarly, Defendant has engaged, and continues to engage, in deceptive, untrue, and misleading advertising by continuing to promote and sell Aerosol Spray Products that are contaminated with benzene. Defendant also misleads consumers by promising, among other things, (i) that safety is "at the heart of everything we do," (ii) that it has a "rigorous safety process to analyze every ingredient-before we ever consider putting it in one of our products"; (iii) that "we evaluate all ingredients in the product to ensure they are safe when used – both for you and the environment."[21] Plaintiffs and the putative Class members were exposed to one or more of these representations during the class period and relied on one or more of these representations in deciding to purchase Defendant's Aerosol Antiperspirant Products.

43.     By committing the acts alleged above, Defendant has engaged in unconscionable,

---

[21] https://us.pg.com/product-safety/.

deceptive, or unfair acts or practices, which constitute unfair competition within the meaning of FDUTPA.

44.     Defendant's conduct is substantially injurious to consumers. Consumers are purchasing and using Defendant's Aerosol Spray Products without knowledge that the Aerosol Spray Products are contaminated with a human carcinogen. This conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid for Aerosol Spray Products contaminated with benzene but for Defendant's false labeling, advertising, and promotion. Thus, Plaintiff and the putative Class have been "aggrieved" (i.e. lost money) as required for FDUTPA standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition.

45.     Indeed, no benefit to consumers or competition results from Defendant's conduct. Since consumers reasonably rely on Defendant's labeling of the ingredients and other information disclosing what is contained in the Aerosol Spray Products and injury resulted from ordinary use of the Aerosol Spray Products, consumers could not have reasonably avoided such injury.

46.     Further, Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary. Plaintiff is a long time users of Defendant's Aerosol Spray Products, and she desires to purchase Defendant's Aerosol Spray Products in the future if she can be assured that the Aerosol Spray Products are unadulterated and meet the advertising claims. Absent injunctive relief, Defendant may continue to advertise, promote and sell adulterated Aerosol Spray Products that deceive the public as to their ingredients, contents and/or safety. Plaintiff is thus likely to again be wronged in a similar way. For example, if Plaintiff or the Class members encounter Defendant's Aerosol Spray Products in the future and there is a risk those

products still contain benzene, Plaintiff or Class members may mistakenly rely on the product's label to believe that Defendant's eliminated benzene when they did not.

47.     Florida Statutes, Section 501.204, makes unfair and/or deceptive trade practices in the conduct of any trade or commerce illegal.

48.     Florida Statutes, Section 501.211, creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

49.     Florida Statutes, Section 501.2105, provides that the prevailing party in litigation arising from a cause of action pursuant to Chapter 501 shall be entitled to recover attorney's fees within the limitations set forth therein form the non-prevailing party.

50.     Florida Statutes, Section 501.213, provides that any remedies available under Chapter 501 are in addition to any other remedies otherwise available for the same conduct under state or local law.

51.     Florida Statutes, Section 501.203 (3)(c), states that a person has violated the FDUTPA if he violates "any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices."

52.     Defendant is engaged in the practice of manufacturing, marketing, distributing, selling and otherwise placing into the stream of commerce Aerosol Spray Products which constitutes trade and commerce as defined by Sections 501.203(8) Fla. Stat., and is therefore subject to FDUPTA.

53.     As a result of Defendant's unfair and deceptive trade practices, Plaintiff and the Class members are entitled to an award of attorney's fees pursuant to FDUTPA, Florida Statutes, Section 501.2105, if they prevail.

54.     Wherefore, Plaintiff Martinez and the Florida Sub-Class, pray for judgement

against Defendant, as set forth hereafter. Defendant's conduct with respect to the labeling, advertising, marketing, and sale of their Aerosol Spray Products is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

55.     In accordance with FDUTPA,[22] Plaintiff Martinez, and the Florida Sub-Class, seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

56.     On behalf of Plaintiff Martinez and the Class, Plaintiff also seeks an order entitling her the Class to recover all monies spent on the Defendant's Aerosol Spray Products, which were acquired through acts of fraudulent, unfair, or unlawful competition.[23] In addition, the measure of restitution should be full refund of the purchase price insofar as the Aerosol Spray Products and their associated labels are worthless. But for Defendant's misrepresentations and omissions, Plaintiff and Class members would have paid nothing for Aerosol Spray Products containing benzene. Indeed, there is no discernible "market" for an over-the-counter dry shampoo or dry conditioner product that is adulterated with a known human carcinogen. As recognized by the WHO, "[b]enzene is carcinogenic to humans, and no safe level of benzene can be recommended."[24] As a result, the Defendant's Aerosol Spray Products are rendered valueless.

57.     Wherefore, Plaintiff Martinez and members of the Class are entitled to injunctive and equitable relief, and a full refund in the amount they spent on the Defendant's Aerosol Spray

---

[22] Section 501.211(1) allows "anyone aggrieved by a violation of" FDUTPA to seek declaratory or injunctive relief. Fla. Stat. §501.211.
[23] Section 501.211(2) provides that "a person who has suffered a loss as a result of a [FDUTPA] violation ... may recover actual damages . . . ."
[24] https://www.who.int/ipcs/features/benzene.pdf.

Products.

## COUNT II

### Unjust Enrichment

### (On Behalf of the Nationwide Class and All State Classes)

58.     Plaintiff incorporates by reference and re-allege each and every allegation contained above, as though fully set forth herein.

59.     As a result of Defendant's wrongful and deceptive conduct alleged herein, Defendant knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by the Plaintiff and members of the Class when they purchased the Aerosol Spray Products.

60.     In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

61.     As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

62.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

63.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Aerosol Spray Products to Plaintiff and members of the Class.

64.     Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

65.     The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class.

66.     Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.

67.     Finally, Plaintiff and members of the Class may assert an unjust enrichment claim even though a remedy at law may otherwise exist.[25]

## COUNT III

### Negligent Misrepresentation/Omission

### (On Behalf of the Nationwide Class and All State Classes)

68.     Plaintiff incorporates by reference and re-allege each and every allegation contained above, as though fully set forth herein.

69.     Through its labeling and advertising, Defendant made representations to the Plaintiff and the Class members concerning the content of its Aerosol Spray Products.

70.     Defendant has a duty to provide accurate information to consumers with respect to the contents of its Aerosol Spray Products as detailed above.

71.     Defendant failed to fulfill their duty to accurately disclose, through its labeling, advertising or otherwise, that its Aerosol Spray Products contain benzene.

72.     Additionally, Defendant has a duty to not make false representations with respect to its Aerosol Spray Products.

---

[25] *See State Farm Mut. Auto Ins. Co. v. Physicians Injury Care Ctr.,* 427 F. App'x 714, 723 (11th Cir. 2011), *rev'd on other grounds*, 824 F.3d 1311 (The general rule that "equitable remedies are not available under Florida law when adequate legal remedies exist . . . does not apply to unjust enrichment claims."); *see also Morris v. ADT Sec. Services*, 580 F.Supp.2d 1305, 1312-13 (S.D. Fla. 2008); *In re Monat Hair Prods. Mktg., Sales Prac., and Prods. Liab. Litig*., 2019 WL 5423457, at *5 (S.D. Fla. Oct. 23, 2019); *Garcia v. Clarins USA, Inc.*, 2014 WL 11997812, at *5 (S.D. Fla. Sept. 5, 2014); *Goldberg v. Chong,* 2007 WL 2028792 at *9 (S.D. Fla. July 11, 2007).

73.     Defendant failed to fulfill this duty when it made false representations regarding the quality and safety of the Aerosol Spray Products as detailed above.

74.     Such failures to disclose on the part of Defendant amount to negligent omission and the representations regarding the quality and safety of the product amount to negligent misrepresentation.

75.     Defendant's conduct constitutes fraud in the inducement in that it occurred in connection with misrepresentations, statements or omissions which caused the Plaintiff and putative Class members to enter into a transaction (i.e. to purchase Defendant's Aerosol Spray Products). As such, Defendant's fraudulent activities occurred independent of the contract to purchase.

76.     Plaintiff and the other members of the Class reasonably relied upon such representations and omissions to their detriment.

77.     By reason thereof, Plaintiff and the other Class members have suffered damages in an amount to be proven at trial.

**COUNT IV**

**Breach of Express Warranty**

**(On Behalf of the Nationwide Class and All State Classes)**

78.     Plaintiff incorporates by reference and re-allege each and every allegation contained above, as though fully set forth herein.

79.     Plaintiff and each Class member purchased the Defendant's Aerosol Spray Products from common retail settings. There was no learned intermediary between the manufacturer and the end-purchaser at the time of purchase and the express warranties were on the Aerosol Antiperspirant Product packaging, labeling, and via direct-to-consumer advertising.

22

80.     Plaintiff and each Class member formed a contract with Defendant at the time
Plaintiff and the other Class members purchased the Defendant's Aerosol Spray Products. The
terms of the contract include the promises and affirmations and omissions of fact made by
Defendant on its Aerosol Antiperspirant Product packaging, labeling, and through marketing and
advertising. This labeling, marketing, and advertising constitute express warranties and became
part of the basis of the bargain, and are part of the standardized contract that Defendant entered
into with Plaintiff and each Class member.

81.     Defendant expressly warranted that its Aerosol Spray Products were fit for their
ordinary use (i.e., as a safe product suitable for human application) to "absorb[] oil, without
washing so fine hair won't fall flat." It also expressly warranted that its Aerosol Spray Products
were not adulterated or misbranded.

82.     Plaintiff and each Class member read and relied on one or more of the express
warranties provided by Defendant in the labeling, packaging and written advertisements in
deciding to purchase the Aerosol Spray Products.

83.     Defendant's Aerosol Spray Products did not conform to Defendant's express
representations and warranties because they were not manufactured in compliance applicable
standards, were not suitable for human application, and were adulterated and misbranded.

84.     At all times relevant all the following States and Territories have codified and
adopted the provisions of the Uniform Commercial Code: Ala. Code § 7-2-313; Alaska Stat. §
45.02.313; Ariz. Rev. Stat. Ann. § 47-2313; Ark. Code. Ann. § 4-2-313; Cal. Com. Code § 2313;
Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. Ann. § 42a-2-313; 6 Del. Code. § 2-313; D.C. Code.
§ 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code. Ann. § 11-2-313; Haw. Rev. Stat. § 490:2-313;
Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313; Ind. Code Ann. § 26-1- 2-313; Kan.

Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313; 11 Me. Rev. Stat. Ann. § 2-313; Md.

Code. Ann. § 2-313; Mass. Gen. Law Ch. 106 § 2-313; Mich. Comp. Laws Ann. § 440.2313;

Minn. Stat. Ann. § 336.2-313; Miss. Code Ann. § 75-2-313; Mo. Rev. Stat. § 400.2- 313; Mont.

Code Ann. § 30-2-313; Nev. Rev. Stat. U.C.C. § 104.2313; N.H. Rev. Ann. § 382- A:2-313; N.J.

Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat.

Ann. § 25-2-313; N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A §

2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I.

Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Stat. § 57A-2-313; Tenn. Code Ann. §

47-2-313; Tex. Bus. & Com. Code Ann. § 2-313; Utah Code Ann. § 70A2-313; Va. Code § 8.2-

313; Vt. Stat. Ann. 9A § 2-313; W. Va. Code § 46-2-313; Wash. Rev. Code § 62A 2-313; Wis.

Stat. Ann. § 402.313 and Wyo. Stat. § 34.1-2-313.

85.     At the time that Defendant marketed and sold its Aerosol Spray Products, it

recognized the purposes for which the products would be used, and expressly warranted the

products were suitable for human application and not adulterated or misbranded. These

affirmative representations became part of the basis of the bargain in every purchase by Plaintiff

and each Class member.

86.     Plaintiff and each Class member are natural persons who are reasonably expected

to use, consume, or be affected by the adulterated and/or misbranded Aerosol Spray Products

manufactured and sold by Defendant.

87.     Defendant breached its express warranties with respect to its Aerosol Spray

Products because the products were not suitable for human application because they were

adulterated with benzene and misbranded.

88.     Plaintiff and each Class member would not have purchased the Aerosol Spray

Products had they known the products contained benzene, were not suitable for human application, did not comply with applicable standards, and/or were adulterated and misbranded.

89.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and other Class members have been injured and suffered damages in the amount of the purchase price of their Aerosol Spray Products, and any consequential damages resulting from the purchases, in that the Aerosol Spray Products they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

## COUNT V

## Breach of Implied Warranty

## (On Behalf of the Nationwide Class and All State Classes)

90.     Plaintiff incorporates by reference and re-allege each and every allegation contained above, as though fully set forth herein.

91.     Defendant was at all relevant times the manufacturer, distributor, warrantor and/or seller of the Aerosol Spray Products. Defendant knew or had reason to know of the specific use for which its Aerosol Spray Products were purchased.

92.     Because the Aerosol Spray Products contain benzene, they were not of the same quality as those generally acceptable in the trade and were not fit for the ordinary purposes for which such Aerosol Spray Products are used.

93.     Plaintiff and members of the Class purchased the Aerosol Spray Products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

94.     The Aerosol Spray Products were not altered by Plaintiff or members of the Class.

95.     Plaintiff and members of the Class were foreseeable users of the Aerosol Spray

Products.

96.     Plaintiff and members of the Class used the Aerosol Spray Products in the manner intended.

97.     As alleged, the Aerosol Spray Products were not adequately labeled and did not disclose that they contain benzene.

98.     The Aerosol Spray Products did not measure up to the promises or facts stated in the written literature, media advertisement and communications by and from Defendant.

99.     Defendant impliedly warranted that the Aerosol Spray Products were merchantable, fit and safe for ordinary use.

100.     Defendant further impliedly warranted that the Aerosol Spray Products were fit for the particular purposes for which they were intended and sold. At the time Defendant marketed and otherwise placed its Aerosol Spray Products into the stream of commerce, it knew of the particular purpose for which Plaintiff and the Class members purchased the Aerosol Spray Products—to have a safe and effective dry shampoo and/or dry conditioner—which did not contain any dangerous carcinogens. Defendant also knew that consumers, including Plaintiff and members of the Class, would have no ability or opportunity to determine the ingredients in the Aerosol Spray Products, but instead would rely on Defendant's representations that the Aerosol Spray Products were suitable for their particular purpose and free of dangerous carcinogens (i.e., benzene)

101.     Contrary to these implied warranties, the Aerosol Spray Products were defective, unmerchantable, and unfit for their ordinary use when sold, and unfit for the particular purpose for which they were sold.

102.     Further, as the intended consumers and ultimate users of the Aerosol Spray

26

Products, Plaintiff and the Class members are intended third-party beneficiaries of any contracts between Defendant and any retailers from whom Plaintiff obtained Aerosol Spray Products, which contain the implied warranty of merchantability and to be fit for ordinary purposes, safe and not hazardous to one's health. Plaintiff and the Class members, not any retailers, are the parties intended to benefit by any such contract because they are the people using the Aerosol Spray Products in the manner intended.

103.     In breach of the implied warranty of merchantability, the Aerosol Spray Products that Defendant provided to Plaintiff and the Class members are not fit and suitable for their ordinary purpose because, inter alia, they contain a dangerous carcinogen with the potential of causing serious injury and/or death. Defendant's Aerosol Spray Products supplied to Plaintiff and the Class members did not possess the basic degree of fitness for ordinary use due to the defects described herein. The defects are so basic that they render the Aerosol Spray Products unfit for their ordinary purposes. As such, they are not merchantable.

104.     As a direct and proximate result of Defendant's breach, Plaintiff and the Class members have suffered, and will continue to suffer, significant damages, loss and injury in an amount that will be established at trial.

## COUNT VI

## Strict Product Liability – Failure to Warn

## (On Behalf of the Nationwide Class and All State Classes)

105.     Plaintiff incorporates by reference and re-allege each and every allegation contained above, as though fully set forth herein.

106.     Defendant knew or should have known that its Aerosol Spray Products contained benzene, which is a known carcinogen.

107.    Defendant had a duty to warn Plaintiff and the Class about the presence of benzene in its Aerosol Spray Products.

108.    In addition, Defendant had a duty to warn Plaintiff and the Class about the dangers of the presence of benzene in their Aerosol Spray Products.

109.    Defendant knew that the risk of exposure to benzene from use of their products was not readily recognizable to an ordinary consumer and that consumers would not inspect the product for benzene content.

110.    Defendant did not warn Plaintiff and the Class that the Aerosol Spray Products contained benzene or about the dangers of the presence of benzene in their Aerosol Spray Products.

111.    Defendant failed to fulfill this duty when it made affirmative representations regarding the quality and safety of the Aerosol Spray Products as detailed above. Such affirmative representations regarding the safety of the Aerosol Spray Products constitute negligent misrepresentations which are independent of Plaintiff' economic loss.

112.    Plaintiff and other Class members have lost time finding alternative dry shampoo and/or dry conditioner products as well as suffered from anxiety and apprehension associated with potential personal injury arising out of using Aerosol Spray Products adulterated with benzene.

113.    Plaintiff and the Class have suffered damages by purchasing Aerosol Spray Products in a manner promoted by Defendant, and in a manner that was reasonably foreseeable by Defendant, because benzene is a known carcinogen that is absorbed through inhalation and the skin. Plaintiff and the members of the Class would not have purchased Defendant's Aerosol Spray Products had they known they contained benzene.

114.     Plaintiff and the Class were justified in their reliance on Defendant's labeling and advertising of the product for use as an antiperspirant and/or deodorant.

115.     Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## COUNT VII

### Strict Product Liability – Manufacturing Defect

### (On Behalf of the Multi-State Class and All State Classes)

116.     Plaintiff incorporates by reference and re-allege each and every allegation contained above, as though fully set forth herein.

117.     The Aerosol Spray Products contained a manufacturing defect when they left the possession of Defendant. Specifically, the Aerosol Spray Products differ from Defendant's intended result or from other lots of the same product line because they contain excessive levels of benzene.

118.     Plaintiff and members of the Class used the Aerosol Spray Products in a way that was reasonably foreseeable to Defendant.

119.     As a result of the defects in the manufacture of the Aerosol Spray Products, Plaintiff and the Class suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against the Defendant as to each and every count, including:

A.     An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class/Sub-Classes, and requiring Defendant to bear the costs of class notice;

B.     An order enjoining Defendant from selling the Aerosol Spray Products;

29

C.      An order enjoining Defendant from suggesting or implying that they are safe and effective for human application;

D.      An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling all Aerosol Spray Products contaminated with benzene;

E.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.      An order requiring Defendant to pay restitution/damages to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising in violation of the above-cited authority, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendant to disgorge any ill-gotten benefits received from Plaintiff and members of the Class/Sub-Classes as a result of any wrongful or unlawful act or practice;

H.      An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

I.      An order awarding attorneys' fees and costs to Plaintiff and the Class/Sub-Classes; and

J.      An order providing for all other such equitable relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.


DATED: January 10, 2022.



By:  R. Jason Richards
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
R. JASON RICHARDS (FL Bar # 18207)
BRYAN F. AYLSTOCK (FL Bar # 0078263
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: jrichards@awkolaw.com
         baylstock@awkolaw.com

*Attorneys for Plaintiff*